**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES, ex rel., | ) | |
| EDWIN DUNTEMAN, | ) | |
| | ) | |
| Relators, | ) | Case No.: 4:98CV01903SNL |
| | ) | |
| v. | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| TENET HEALTH SYSTEMS SL-HLC, | ) | |
| INC., ST. LOUIS UNIVERSITY, | ) | |
| and LAWRENCE BAUDENDISTEL, | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

COMES NOW Relator Edwin Dunteman, individually and on behalf of the United States Government, as a Qui Tam Relator, pursuant to 31 U.S.C.A. § 3729 et seq., and for his Third Amended Complaint, states to the Court as follows:

### The Parties

1.  Relator Edwin Dunteman ("Relator") is a resident of the State of Missouri, a citizen of the United States of America, and is duly licensed by the State of Missouri's Board of Registration for the Healing Arts to practice medicine in this State. Relator is a Board certified physician with expertise in the area of anesthesiology and pain management.

2.  Defendant Tenet Health Systems SL-HLC, Inc. ("Tenet") is a corporation in good standing pursuant to the laws of the State of Missouri, presently conducting business at various locations within the jurisdiction of this District Court. At the pertinent times stated herein, Tenet conducted business, in particular, at 3635 Vista Avenue at Grand Blvd., St. Louis, Missouri and at 5139 Mattis Road, St. Louis County, State of Missouri.

3.  Defendant St. Louis University ("SLU") is a corporation in good standing pursuant to the laws of the State of Missouri, presently conducting business at various locations within the jurisdiction of this District Court, pursuant to certain fictitious names, including "SLU Care" and "St. Louis University Medical Center" and "St. Louis University Hospital" and "St. Louis University School of Medicine" and "St. Louis Hospital" and "St. Louis University" and "St. Louis University Medical Group."  At all pertinent times stated herein, SLU conducted business, in particular, at 3635 Vista Avenue at Grand Blvd., St. Louis, Missouri and at 5139 Mattis Road, St. Louis County, State of Missouri.

4.  Defendant Dr. Lawrence Baudendistel, M.D. ("Baudendistel"), is presently an anesthesiologist practicing primarily at various locations within the jurisdiction of this District Court and who, upon information and belief, at all pertinent times stated herein, was a resident of St. Louis County, Missouri and was employed by Defendant SLU, and not by Defendant Tenet. At all times stated herein, Defendant Baudendistel, as chairman of SLU's department of anesthesiology, possessed actual, implied and apparent authority to bind SLU, acted as an agent of SLU and all acts described herein attributed to Defendant Baudendistel were performed while in the course of his employment with SLU.

**Jurisdiction, Venue and Service of Process**

5.  This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C.A. § 1332, inasmuch as this action arises under the laws of the United States and pursuant to 31 U.S.C.A. § 3729 et seq.

6.  Pursuant to 31 U.S.C.A. § 3732 the United States District Court has exclusive jurisdiction over any and all actions brought against persons making false claims as described herein at the aforementioned locations.

7. This Court has personal jurisdiction over the defendant SLU in that it is a corporation and registered in the State of Missouri with its principal place of business in the City of St. Louis, State of Missouri and the claims stated against it are related to and arise out of acts performed in the Eastern District of Missouri.

8. This Court has personal jurisdiction over the defendant Tenet in that it is incorporated in the State of Missouri with its principal place of business in the State of Missouri and the claims stated against it are related to and arise out of acts performed in the Eastern District of Missouri.

9. This Court has personal jurisdiction over Defendant Baudendistel in that he was employed by SLU at locations in the State of Missouri, and the claims stated against him are related to and arise out of acts performed in the Eastern District of Missouri.

10. Venue is proper in the United States District Court for the Eastern District of Missouri, Eastern Division pursuant to 28 U.S.C.A. §§ 1391(b) and (c) and 31 U.S.C.A. § 3732(a) because SLU, Tenet and Baudendistel (hereinafter sometimes collectively referred to as "Defendants") at all pertinent times stated herein and at the present time are located in and/or transact business in this District and the facts forming the basis for this lawsuit occurred in this District.

**Facts**

11. At all times stated herein, Relator is a "private person," as that term is used in 31 U.S.C.A. § 3730(b), and has capacity to bring this action against Defendants for violation of 31 U.S.C.A. § 3729.

12. At all times stated herein, each of the Defendants is a "person," as that term is used in 31 U.S.C.A. § 3729, and each may be liable to the United States Government for submitting false claims.

13. On or about September 1, 1997, Relator began his employment at SLU as a physician in the Department of Anesthesiology, Pain Management Services at the above-referenced locations.

14. During his employment with Defendants, Relator would have occasion to personally observe the medical services provided by employees, representatives and agents of SLU and/or Tenet.

15. On or about July 6, 1998, Relator was forced to resign from his employment with SLU after advising the Defendants, and each of them, that he believed some or all of the Defendants were engaging in medical and billing practices designed to defraud Medicaid, Medicare and individual patients. All of the allegations set forth in the present Third Amended Complaint regarding said billing practices constitute a pattern of practice observed by Relator throughout his employment with Defendants.

16. SLU and/or Tenet had and have an agreement with Medicaid and Medicare whereby the services of certain medical doctors and the supplies provided pursuant to said services are billed at certain contractually agreed to rates.

17. As a result of Relator's employment with Defendants, Relator learned that agents, representatives and employees of SLU, including Baudendistel, in violation of 31 U.S.C.A. § 3729, knowingly presented or caused to be presented to an officer and/or employee of the United States Government, false and/or fraudulent claims for reimbursement, pursuant to the Medicare and/or Medicaid programs, as a result of each and every one of the following:

(a) Agents, representatives and employees of SLU, including Baudendistel, knowingly submitted claims to the United States Government that included charges for services that were not rendered by faculty physicians nor by interns or residents directly supervised by faculty physicians;

(b) Agents, representatives and employees of SLU, including Baudendistel, knowingly submitted claims to the United States Government that included charges for services and/or supplies that, in fact, were not performed and/or provided;

(c) Agents, representatives and employees of SLU, including Baudendistel, knowingly submitted claims to the United States Government that included charges for post-operation services and/or supplies rendered to patients even though said charges were "global" and, as such should have been "bundled" and already were covered by the initial reimbursement procured as a result of the operation itself; and

(d) Agents, representatives and employees of SLU, including Baudendistel, knowingly submitted claims to the United States Government, that included charges for services and procedures allegedly performed in one facility when, in fact, said services and procedures were performed in another facility where a reimbursement from Medicare and/or Medicaid would not be possible.

18. Agents, representatives and employees of SLU, including Baudendistel, knowingly submitted the aforementioned claims with actual knowledge that the information contained in said claims was false and/or in deliberate ignorance of the truth or falsity of the information contained in said claims and/or in reckless disregard of the truth or falsity of the information contained in said claims.

## Procedural Background

19. Relator's original complaint was filed under seal, with service only on the United States Attorney General and the United States Attorney for the Eastern District of Missouri, pursuant to the Federal Rules of Civil Procedure. From November 13, 1998, when the case was filed, until this Court's Order of October 1, 2003, the case remained under seal, as required by Federal Statute, 31 U.S.C.A. § 3730(b)(2).

20. On or about October 15, 1999, this Court entered orders partially lifting the seal to allow the United States to disclose to SLU the fact that this cause of action and another qui tam lawsuits had been filed against SLU.

21. Meanwhile, on August 21, 1998, Relator had filed suit against these same Defendants in the Circuit Court for the City of St. Louis, seeking relief for state law claims arising out of Relator's employment with Defendants, in *Edwin Dunteman vs. Lawrence Baudendistel, et al.,* Cause Number *982*-08738 ("St. Louis City Case").

22. In the St. Louis City Case, these same three Defendants, while sharing the same counsel, became aware of the fact that Relator had filed the qui tam suit and sought discovery of information from Relator that would have caused him to infringe upon the seal in the present action.

23. In order to respond to Defendants' discovery requests, Relator would have been forced to breach the seal and reveal details of the qui tam investigation.

24. Relator dismissed the St. Louis City Case on May 5, 2000.

## Counts I, II, III & IV – Violations of the Federal False Claims Act

25. Relator incorporates by reference herein as if set out in full: each and every averment set forth hereinabove in paragraphs 1 through 24 of this Third Amended Complaint; and each

and every averment set forth in paragraphs 21 through 33, 35 through 44, 21 through 33, 35 through 44, 46 through 54 and 56 through 64 of Relator's First Amended Complaint filed herein on February 23, 2000 and/or each and every averment set forth in paragraphs 21 through 33, 35 through 44, 21 through 33, 35 through 44, 46 through 54 and 56 through 64 of his Second Amended Complaint, filed herein on July 9, 2003.

26. Counts I, II, III and IV were disposed of, in part, by virtue of the settlement agreement entered into between the United States and SLU in September 2003 ("Agreement"). A true and accurate copy of said Agreement was marked "Plaintiff's Exhibit 1," was attached as an exhibit to the Affidavit of Gary M. Siegel, filed on May 14, 2004, and is incorporated by reference herein as if set out in full.

27. As a result of said Agreement, the United State intervened in this matter and this Court entered its Order of October 1, 2003, which resolved all issues between SLU and the United States as to Counts I, II, III and IV.

28. The Agreement also established that Baudendistel had been employed by Defendant SLU, and not by Defendant Tenet. Therefore, Defendant SLU would be liable for any and all conduct that could be attributed to Defendant Tenet in this cause of action.

29. Defendant SLU and/or Baudendistel – and not Defendant Tenet – is liable for any and all damages arising out of the conduct stated herein.

30. Counts I, II, III and IV also were disposed of, in part, as a result of the following:

(a) This Court's Order of January 10, 2003, awarding Relator a judgment against SLU for attorney fees and costs incurred by Relator relative to his participation in the resolution of Counts I, II, III and IV; and

(b) The agreement entered into between the United States and Relator, pursuant to 31 U.S.C. 3729(d), which provided that Relator, as a Qui Tam plaintiff in this case, was entitled to a portion of the proceeds paid by SLU to the United States, as a statutory award, as a result of his participation in the resolution of Counts I, II, III and IV.

**Count V – Relator's Retaliation Claim Under the Federal False Claims Act against SLU**

COMES NOW Relator Edwin Dunteman, individually, pursuant to 29 U.S.C.A. § 3730(h) and for Count V of his Third Amended Complaint against Defendant SLU, states to the Court as follows:

31. Relator incorporates by reference herein as if set out in full: each and every averment set forth hereinabove in paragraphs 1 through 30 of this Third Amended Complaint.

32. As a result of Relator's employment with SLU, Relator learned of information that led him to believe, in good faith, that SLU and Baudendistel knowingly presented or caused to be presented to an officer and/or employee of the United States Government, false and/or fraudulent claims for reimbursement, pursuant to the Medicare and/or Medicaid programs, in violation of 31 U.S.C.A. § 3729, et seq.

33. A reasonable employee in the same or similar circumstances would have believed that SLU and Baudendistel knowingly presented or caused to be presented to an officer and/or employee of the United States Government, false and/or fraudulent claims for reimbursement, pursuant to the Medicare and/or Medicaid programs, in violation of 31 U.S.C.A. § 3729, et seq.

34. SLU and Baudendistel submitted the aforementioned claims with actual knowledge that the information contained in said claims was false or fraudulent and/or in deliberate

ignorance of the truth or falsity of the information contained in said claims and/or in reckless disregard of the truth or falsity of the information contained in said claims.

35. By their conduct, as set forth in the preceding paragraphs, SLU and Baudendistel knowingly presented or caused to be presented fraudulent claims in violation of 31 U.S.C.A. § 3729(a)(1).

36. By their conduct as described in the preceding paragraphs, SLU and/or their employees and agents, including Baudendistel, conspired with each other for the purpose of defrauding the United States Government in violation of 31 U.S.C.A. § 3729(a)(3).

37. The conduct stated above has been at all relevant times undertaken specifically and knowingly by SLU and Baudendistel and others for the purpose of increasing the profits and earnings of SLU and Baudendistel.

38. The conduct stated above, which constitutes the submission of false claims as defined by the applicable statutory provisions and interpretive case law, at all relevant times, was known to SLU and Baudendistel and was approved either specifically or tacitly by SLU and Baudendistel.

39. Employees and agents of SLU, including Baudendistel, on a number of occasions, requested of Relator to submit false and/or fraudulent claims during Relator's term of employment at SLU; however, Relator refused said requests and expressed to said employees and agents, including Baudendistel, that he would refuse to engage in the fraudulent and/or false billing practices; in addition, Relator insisted, on a number of occasions during his employment at SLU, that the employees and agents of SLU, including Baudendistel and Baudendistel's supervisor(s), abandon said fraudulent billing practices.

40.  By refusing the requests to engage in the aforesaid fraudulent billing practices and/or by apprising Defendants of the aforesaid fraudulent billing practices and/or by insisting that Defendants desist from filing false claims, Relator engaged in protected conduct and lawful acts in furtherance of a claim under the False Claims Act.

41.  Instead of ceasing said fraudulent billing practices, SLU and Baudendistel retaliated against Relator for Relator's refusing to engage in said fraudulent billing practices and for Relator's insisting that SLU and Baudendistel abandon their fraudulent billing practices; said retaliatory conduct was designed to force Relator to resign and included, without limitation, the following:

(a) SLU and Baudendistel stripped Relator of all authority to perform the duties for which he was employed;

(b) SLU and Baudendistel created a hostile work environment;

(c) SLU and Baudendistel and each of them demanded that Relator cover Acute Service Care because, according to Defendant Baudendistel, he wanted a "white boy seen on the floors;"

(d)  SLU and Baudendistel fabricated unsubstantiated and slanderous claims with regard to Relator's professional competence;

(e)  SLU and Baudendistel attempted to place blame on Relator for certain acts for which he was not responsible;

(f)  SLU and Baudendistel engaged in volatile and vulgar behavior designed to insult and inflame Relator;

(g)  SLU and Baudendistel consistently violated patients' confidences by barging in unannounced on consultations between Relator and said patients.

42.  SLU and Baudendistel knew that Relator had engaged in said protected conduct and, in retaliation for said protected conduct, SLU and Baudendistel demoted, threatened, harassed and, eventually, coerced Relator to resign and the above-mentioned acts of retaliation were motivated solely by Relator's protected conduct.

43.  Even after Relator had tendered his resignation, SLU and Baudendistel further retaliated against Relator and engaged in a pattern of conduct, which included certain slanderous comments, designed to interfere with Relator's practice, with his reputation in the medical community and with his relationships with his patients, and which include but is not limited to the following acts:

> (a) By refusing to provide information to the patients about Relator's whereabouts, by causing Relator's patients to believe that Relator was not accepting any referrals, by causing Relator's patients to be told that Relator refused to consult with them;
>
> (b) By providing Relator's patients with false information about Relator, by making false statements about Relator to other individuals in the medical community;
>
> (c) By refusing to cooperate in providing Relator with information about Relator's patients;
>
> (d) By interfering with Relator's ability to provide his patients with continuous care after Relator left SLU's employ;
>
> (e) By causing patients to be told that Relator's whereabouts were unknown;
>
> (f) By causing patients to be told that Relator failed to instruct SLU nor its employees as to his whereabouts;

(g) By informing referring physicians, with whom Relator enjoyed longstanding professional relationships, that Relator personally stopped accepting new patients and/or that Relator was unavailable to assist said new patients and/or that Relator had left the practice;

(h) Upon information and belief, by causing his new employer into pressuring Relator into dismissing this action; and

(i) Upon information and belief, by attempting to sabotage Relator's relationships with his new employer and with certain area hospitals with whom Relator enjoyed privileges;

44.    As a direct and proximate result of the aforementioned acts and omissions of SLU and Baudendistel, Relator has suffered damages of an unknown amount as a result of the aforementioned, which include but are not limited to the following:

(a).    Relator first was induced to leave BJC and then SLU and Baudendistel forced Relator to leave SLU, thereby foreclosing Relator from pursuing major academic and clinical opportunities within the St. Louis medical community;

(b).    Relator's patient base and professional reputation has been damaged as a result of Relator's being induced to leave BJC and then being forced to leave SLU and then being subjected to the above-mentioned acts of retaliation;

(c)    Relator's earnings after leaving SLU have been substantially lower than what they would have been had he stayed at BJC or SLU.

45.    The aforementioned acts and omissions of SLU and Baudendistel were done with reckless disregard of Relator's best interests and were done without just cause or excuse.

46.     Said acts and omissions were malicious and outrageous because of their reckless indifference to Relator's best interests.

47.     Said acts and omissions showed complete indifference to and a conscious disregard for Relator's interests.

WHEREFORE, Relator prays for relief as set forth in 31 U.S.C. 3730(h), including without limitation as follows:

A.     Reinstatement, including the same seniority Relator would have had but for the wrongful discharge;

B.     Double back-pay;

C.     Interest on back-pay;

D.     Compensation for special damages; and

E.     Reasonable attorney's fees and litigation costs.


## Count VI – Qui Tam Action Under the Federal False Claims Act

48.     Relator incorporates by reference herein as if set out in full: each and every averment set forth hereinabove in paragraphs 1 through 47 of this Third Amended Complaint; and each and every averment set forth in paragraphs 78 through 81 of Relator's First Amended Complaint filed herein on February 23, 2000 and/or each and every averment set forth in paragraphs 81 through 84 of his Second Amended Complaint, filed herein on July 9, 2003.

49.     Count VI was disposed of, in part, by virtue of the settlement agreement entered into between the United States and SLU in September 2003 ("Agreement"). A true and accurate copy of said Agreement was marked "Plaintiff's Exhibit 1," was attached as an exhibit to the

Affidavit of Gary M. Siegel, filed on May 14, 2004, and is incorporated by reference herein as if set out in full.

50.     As a result of said Agreement, the United State intervened in this matter and this Court entered its Order of October 1, 2003, which resolved all issues between SLU and the United States as to Count VI.

51.     Count VI was disposed of, in part, as a result of the following:

(a) This Court's Order of January 10, 2003, awarding Relator a judgment against SLU for attorney fees and costs incurred by Relator relative to his participation in the resolution of said counts; and

(b)   The agreement entered into between the United States and Relator, pursuant to 31 U.S.C. 3729(d), which provided that Relator, as a Qui Tam plaintiff in this case, is entitled to a portion of the proceeds paid by SLU to the United States, as a statutory award, as a result of his participation in the resolution of Counts I, II, III and IV.

**Count VII – Fraudulent Misrepresentation against SLU and Baudendistel**

COMES NOW Relator Edwin Dunteman, and for Count VII of his Third Amended Complaint against SLU and Baudendistel, and each of them, states to the Court as follows:

52.     Relator incorporates by reference herein as if set out in full: each and every averment set forth hereinabove in paragraphs 1 through 13 and 19 through 24 of this Third Amended Complaint.

53.     In June 1997, Relator was employed at SLU's main competitor, Barnes-Jewish Christian at Washington University's Pain Management Department (hereinafter "BJC").

54.     Relator held a key position at BJC and, in addition to conducting a private practice, Relator engaged in academic pursuits, including researching and writing in the field of pain management and anesthesiology.

55.     Relator's work at Washington University's Pain Management Department contributed to making that facility the largest and most competitive pain management center in the metropolitan area.

56.     In June 1997, SLU and Baudendistel conversed with Relator for the purpose of causing Relator and others working for BJC to leave their positions there, offering Relator a position as Executive Director of SLU's Pain Management Services.

57.     From June 1997 to September 1997, Defendant Baudendistel, on behalf of and within the course of his employment with SLU, represented and offered employment to Relator pursuant to the following terms:

     a.     Relator would hold the position of Executive Director of Pain Management Services;

     b.     Relator would have a "leading role" in the academic development of SLU's department of anesthesiology;

     c.     Relator's focus as Executive Director would be to develop and lead a core team of professionals committed to the discipline of pain management as their specialty;

     d.     Relator would receive from SLU ample sufficient quality services and resources to support Relator's aforementioned objectives, including but not limited to

sufficient quality and quantity of dedicated space as well as sufficient administrative and clerical staff support;

       e.      Relator would have at least 20 percent (20%) of his time to devote to non-clinical (academic, administrative) matters.

(hereinafter "Representations").

      58.      Relying upon said Representations, Relator in fact left the previously described position at BJC and accepted said offer of employment with SLU and, in July 1997, Relator and the other BJC employees began their employment with SLU.

      59.      After Relator left BJC to join SLU, Relator discovered the following acts and omissions had been perpetuated by SLU and Baudendistel:

      (a).      SLU and Baudendistel and each of them already had hired a Dr. Daoud to hold the very same position for which Relator was hired;

      (b).      SLU and Baudendistel and each of them would not provide Relator with a desk, file cabinet or even office space necessary to perform the duties attendant to the stated position for which he was hired;

      (c).      SLU and Baudendistel and each of them would not provide Relator with computer access to the hospital and department network sufficient to allow Relator to perform the duties attendant to the stated position for which he was hired;

      (d).      SLU and Baudendistel and each of them would not provide Relator with sufficient nursing and clerical support to the point that the care of the patients was severely jeopardized and compromised;

(e).     SLU and Baudendistel and each of them refused to provide Relator with the resources necessary for him to pursue academic goals and precluded him from pursuing these academic goals by eliminating the non-clinical time that had been promised; and

60.     In addition to the aforementioned acts and omissions, SLU and Baudendistel and each of them engaged in a pattern of conduct designed to make working conditions so intolerable for Relator so as to force his resignation, including but not limited to the following acts:

(a)   SLU and Baudendistel fabricated unsubstantiated and slanderous claims with regard to Relator's professional competence;

(b)   SLU and Baudendistel attempted to place blame on Relator for certain acts for which he was not responsible;

(c)   SLU and Baudendistel engaged in volatile and vulgar behavior designed to insult and inflame Relator;

(d)   SLU and Baudendistel consistently violated patients' confidences by barging in unannounced on consultations between Relator and said patients;

(e)   SLU and Baudendistel stripped Relator of all authority to perform the duties for which he was employed;

(f)   SLU and Baudendistel created a hostile work environment;

(g)   SLU and Baudendistel and each of them demanded that Relator cover Acute Service Care because, according to Defendant Baudendistel, he wanted a "white boy seen on the floors;"

61.     Even after Relator had tendered his resignation, SLU and Baudendistel each engaged in a pattern of conduct, which included certain slanderous comments, designed to

interfere with Relator's practice, with his reputation in the medical community and with his relationships with his patients, and which include but is not limited to the following acts:

(a) By refusing to provide information to the patients about Relator's whereabouts, by causing Relator's patients to believe that Relator was not accepting any referrals, by causing Relator's patients to be told that Relator refused to consult with them;

(b) By providing Relator's patients with false information about Relator, by making false statements about Relator to other individuals in the medical community;

(c) By refusing to cooperate in providing Relator with information about Relator's patients;

(d) By interfering with Relator's ability to provide his patients with continuous care after Relator left SLU's employ;

(e) By causing patients to be told that Relator's whereabouts were unknown;

(f) By causing patients to be told that Relator failed to instruct Defendants nor their employees as to his whereabouts;

(g) By informing referring physicians, with whom Relator enjoyed longstanding professional relationships, that Relator personally stopped accepting new patients and/or that Relator was unavailable to assist said new patients and/or that Relator had left the practice;

(h) Upon information and belief, by causing his new employer into pressuring Relator into dismissing this action; and

(i)  Upon information and belief, by attempting to sabotage Relator's relationships with his new employer and with certain area hospitals with whom Relator enjoyed privileges.

62.    As indicated by the aforementioned acts and omissions, the Representations by Baudendistel, as set out herein above, were false at the time they were made.

63.    SLU and Baudendistel knew and/or should have known of the falsity of said Representations at the time the Representations were made, and knew or should have known that Relator would rely on these Representations and would leave BJC to join SLU.

64.    Said Representations were material to Relator's decision to leave BJC and join SLU and Relator rightfully relied on said Representations in deciding to leave BJC and join SLU.

65.    SLU and Defendant Baudendistel intended that Relator would rely on the truth of said Representations in deciding to leave BJC, and join SLU and, in making said Representations, SLU and Baudendistel purported to gut BJC's pain management department.

66.    As a direct and proximate result of the aforementioned acts and omissions of Defendants, Relator has suffered damages of an unknown amount as a result of the aforementioned damages as well as the following:

a.    Relator first was induced to leave BJC and then SLU and Baudendistel forced Relator to leave SLU, thereby foreclosing Relator from pursuing major academic and clinical opportunities within the St. Louis medical community;

b.    Relator left BJC one year short of the vesting of his retirement benefits there;

c.      Relator's patient base and professional reputation has been damaged as a result of the aforementioned conduct by SLU and Baudendistel and as a result of Relator's being induced to leave BJC and then being forced to leave SLU; and

d.      Relator's earnings after leaving SLU have been substantially lower than what they would have been had he stayed at BJC or SLU.

67.     The aforementioned acts and omissions of SLU and Baudendistel were done with reckless disregard of Relator's best interests and were done without just cause or excuse.

68.     Said acts and omissions were malicious and outrageous because of their reckless indifference to Relator's best interests.

69.     Said acts and omissions showed complete indifference to and a  conscious disregard for Relator's interests.

WHEREFORE, Relator prays for judgment against SLU and Baudendistel, jointly and severely, for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such amount as would fairly and reasonably punish SLU and Baudendistel and each of them and deter them and others from like conduct, for legal interest, for the costs of this suit, and for such other and further relief as this Court deems just and proper.

### Count VIII: Fraudulent Concealment against SLU and Baudendistel

COMES NOW Relator Edwin Dunteman, and for Count VIII of his Third Amended Complaint against SLU and Baudendistel, and each of them, states to the Court as follows:

70.     Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 52 through 69 of this Third Amended Complaint.

71.     SLU and Baudendistel and each of them failed to disclose to Relator the fact that the Representations set out hereinabove were false.

72.     At the time Relator agreed to leave BJC, SLU and Baudendistel and each of them failed to disclose to Relator that said Representations were false, nor did SLU or Baudendistel disclose the material facts set out hereinabove, even though SLU and Baudendistel knew or should have known of the existence of said material facts.

73.     SLU and Baudendistel and each of them knew or should have known that Relator would rely on these non-disclosures in deciding to leave BJC and to join SLU and, furthermore, SLU and Baudendistel owed Relator the duty to disclose this information as a result of the superior knowledge of said information that SLU and Baudendistel had at the time said Representations were made to Relator.

74.     The aforementioned non-disclosures were material facts unknown to Relator and Relator would not have left BJC had he known of said non-disclosures.

75.     Relator relied on the aforementioned non-disclosures in his deciding to leave BJC and join SLU, and Relator had no way of knowing of the information that was not disclosed.

76.     As a direct and proximate result of the actions and omissions of SLU and Baudendistel, Relator has suffered actual damages as set out herein above in paragraph 66.

77.     Said acts and omissions were done with the intentional or reckless disregard of Relator's best interests and were done without just cause or excuse.

78.     Said acts and omissions were malicious and outrageous because of the reckless indifference to Relator's best interests.

WHEREFORE, Relator prays for judgment against SLU and Baudendistel, jointly and severely, for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such amount as would fairly and reasonably punish SLU and Baudendistel and each of them and deter them and others from like conduct, for legal interest, for the costs of this suit, and for such other and further relief as this Court deems just and proper.

### Count IX: Negligent Misrepresentation against SLU and Baudendistel

COMES NOW Relator Edwin Dunteman, and for Count IX of his Third Amended Complaint against SLU and Baudendistel, and each of them, states to the Court as follows:

79.     Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 52 through 78 of this Third Amended Complaint.

80.     SLU and Baudendistel owed Relator a duty of care which included a duty to disclose the falsity of the material Representations stated hereinabove and/or the duty to disclose the material non-disclosures also set out hereinabove.

81.     In failing to disclose said information to Relator, SLU and Baudendistel and each of them breached said duty and committed gross negligence and acted with a reckless disregard of Relator's best interests and without just cause or excuse, causing

Relator to leave BJC and to join SLU, resulting in Relator to suffer actual damages as set out hereinabove.

82.     As a direct and proximate result of said acts and omissions, Relator suffered actual damages as described hereinabove.

WHEREFORE, Relator prays for judgment against SLU and Baudendistel, jointly and severely, for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such amount as would fairly and reasonably punish SLU and Baudendistel and each of them and deter them and others from like conduct, for legal interest, for the costs of this suit, and for such other and further relief as this Court deems just and proper.

### Count X: Negligent Concealment against SLU and Baudendistel

COMES NOW Relator Edwin Dunteman, and for Count X of his Third Amended Complaint against SLU and Baudendistel, and each of them, states to the Court as follows:

83.     Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 52 through 82 of this Third Amended Complaint.

84.     With regard to the aforementioned non-disclosures, SLU and Baudendistel and each of them owed Relator the duty to disclose said information and the falsity of the aforementioned representations.

85.     SLU and Baudendistel and each of them failed to disclose said information to Relator despite the fact that a reasonable person in Defendants' position would have disclosed said fact to Relator.

86. Said failure to disclose the aforementioned information was a material fact and Relator would not have left BJC and joined SLU and Baudendistel had said information been disclosed.

87. Relator relied upon said non-disclosures in his deciding to leave BJC and join Defendants and each of them.

88. As a direct and proximate result of the acts and omissions of SLU and Baudendistel and each of them, Relator suffered actual damages as set out hereinabove.

89. Said acts and omissions were committed by SLU and Baudendistel and each of them with gross negligence and with the reckless disregard of Relator's best interests and were done without just cause or excuse.

WHEREFORE, Relator prays for judgment against SLU and Baudendistel, jointly and severely, for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such amount as would fairly and reasonably punish SLU and Baudendistel and each of them and deter them and others from like conduct, for legal interest, for the costs of this suit, and for such other and further relief as this Court deems just and proper.

### Count XI: Breach of Contract against SLU

COMES NOW Relator Edwin Dunteman, and for Count XI of his Third Amended Complaint against SLU, states to the Court as follows:

90. Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 1 through 51 and 53 through 58 of this Third Amended Complaint.

91.     During the summer of 1997, Relator and Baudendistel, on behalf of SLU, negotiated the terms of the employment contract executed by the parties, resulting in Relator's commencing employment with SLU on or about September 1, 1997.

92.     The following constituted some of the terms of the contract existing between Relator and SLU:

a.      Relator would hold the position of Executive Director of Pain Management Services;

b.      Relator would have a "leading role" in the academic development of SLU's department of anesthesiology;

c.      Relator's focus as Executive Director would be to develop and lead a core team of professionals committed to the discipline of pain management as their specialty;

d.      Relator would receive from SLU ample sufficient quality services and resources to support Relator's aforementioned objectives, including but not limited to sufficient quality and quantity of dedicated space as well as sufficient administrative and clerical staff support;

e.      Relator would have at least 20 percent (20%) of his time to devote to non-clinical (academic, administrative) matters.

f.      Relator would be allowed academic freedom and the "unhampered pursuit and communication of knowledge and truth;"

g.      Relator and SLU agreed that so long as extramural activities do not, on average, exceed a total of approximately one day a week during the academic year, Relator may accept and retain financial remuneration for said extramural activities;

h.    Relator and SLU agreed that Relator would receive a bonus from the UMG Incentive Plan.

93.    Relator at all times performed all conditions arising out of his contract with SLU.

94.    SLU breached said employment agreement as a result of the aforementioned acts and omissions as described hereinabove in paragraphs 17, 18 and 31-47 and as a result of the following:

a.    SLU and Baudendistel and each of them hired Dr. Daoud to hold the very same position for which Relator was hired;

b.    SLU and Baudendistel and each of them would not provide Relator with a desk, file cabinet or even office space necessary to perform the duties attendant to the stated position for which he was hired;

c.    SLU and Baudendistel and each of them would not provide Relator with computer access to the hospital and department network sufficient to allow Relator to perform the duties attendant to the stated position for which he was hired;

d.    SLU and Baudendistel and each of them would not provide Relator with sufficient nursing and clerical support to the point that the care of the patients was severely jeopardized and compromised;

e.    SLU and Baudendistel and each of them refused to provide Relator with the resources necessary for him to pursue academic goals and precluded him from pursuing these academic goals by eliminating the non-clinical time that had been promised; and

f.    SLU and Baudendistel prohibited Relator from receiving new patients;

g.      SLU caused Relator not to receive the full bonus promised pursuant to the UMG Incentive Plan;

h.      SLU and Baudendistel imposed upon Relator additional clinical duties above and beyond those upon which the parties agreed, causing Relator to suffer loss in the areas of performing outpatient clinic work, writing, and researching;

i.      SLU retained honorarium fees procured by Relator as a result of his extramural lectures in East St. Louis and Carbondale;

j.      SLU caused Relator's patients to be deprived of information necessary to said patients receiving continuous and safe treatment, thereby jeopardizing the health of many patients; and

k.      SLU and Baudendistel engaged in false and/or fraudulent billing practices, as set forth hereinabove.

l.      SLU and Baudendistel retaliated against Relator, as set forth hereinabove in paragraphs 31-47, in response to Relator's engaging in protected conduct

.      95.      As a direct and proximate result of the aforementioned acts and omissions of SLU and Baudendistel, Relator has suffered damages of an unknown amount as a result of the aforementioned, which include but are not limited to the following:

(a).      Relator first was induced to leave BJC and then SLU and Baudendistel forced Relator to leave SLU, thereby foreclosing Relator from pursuing major academic and clinical opportunities within the St. Louis medical community;

(b).      Relator's patient base and professional reputation has been damaged as a result of the retaliatory conduct perpetrated by SLU and Baudendistel, as set forth

hereinabove and as a result of Relator's being induced to leave BJC and then being forced to leave SLU and then being subjected to the above-mentioned acts of retaliation;

(c)     Relator's earnings after leaving SLU have been substantially lower than what they would have been had he stayed at BJC or SLU.

96.     Relator is entitled to pre-judgment interest for all amounts for which he demanded payment from SLU beginning in June 1998 and/or upon his filing aforementioned St. Louis City Case

.     WHEREFORE, Relator prays for judgment against SLU for damages caused by said breach(es) of contract in an amount that is fair and reasonable, for legal interests, for pre-judgment interests, for the costs of this suit, and for such other and further relief as this Court deems just and equitable in the premises.


## Count XII: Tortious Interference With Contractual Relations against Baudendistel

COMES NOW Relator Edwin Dunteman, and for Count XII of his Third Amended Complaint against Baudendistel, states to the Court as follows:

97.     Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 1 through 51 and 90 through 96 of this Third Amended Complaint.

98.     Relator and SLU entered into a contract for employment as set forth hereinabove.

99.     Baudendistel knew of the contractual relationship between Relator and SLU.

100.     Once Baudendistel learned that Relator was engaging in the aforementioned protected conduct, as set forth in Count V hereinabove, Baudendistel intentionally interfered

with said contractual relationship as set forth hereinabove and induced and caused SLU to breach the contract and to sever the relationship.

101. No legal justification existed for Baudendistel to interfere with Relator's contractual relationship with SLU.

102. As a direct and proximate result of the acts and omissions of SLU and Baudendistel and each of them, Relator suffered actual damages as set out hereinabove.

WHEREFORE, Relator prays for judgment against Baudendistel for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such amount as would fairly and reasonably punish Baudendistel and deter him and others from like conduct, for legal interest, for the costs of this suit, and for such other and further relief as this Court deems just and proper.

**Count XIII: Tortious Interference with Contractual and/or Business Relations against Baudendistel and SLU**

COMES NOW Relator Edwin Dunteman, and for Count XII of his Third Amended Complaint against SLU and Baudendistel, and each of them, states to the Court as follows:

103. Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 1 through 51 and 90 through 102 of this Third Amended Complaint.

104. After Relator tendered his resignation, SLU and Baudendistel further retaliated against Relator and engaged in a pattern of conduct designed to interfere with Relator's practice,

with his reputation in the medical community and with his relationships with his patients, as follows:

(a)     By refusing to provide information to the patients about Relator's whereabouts;

(b)     By providing Relator's patients with false information about Relator, by making false statements about Relator to other individuals in the medical community;

(c)     By refusing to cooperate in providing Relator with information about Relator's patients;

(d)     By interfering with Relator's ability to provide his patients with continuous care after Relator left SLU's employ;

(e)     By causing patients to be told that Relator's whereabouts were unknown;

(f)     By causing patients to be told that Relator failed to instruct SLU nor its employees as to his whereabouts;

(g)     By informing referring physicians, with whom Relator enjoyed longstanding professional relationships, that Relator personally stopped accepting new patients and/or that Relator was unavailable to assist said new patients and/or that Relator had left the practice;

(h)     Upon information and belief, by causing Relator's new employer into pressuring Relator into dismissing this action; and

(i)     Upon information and belief, by attempting to sabotage Relator's relationships with his new employer and with certain area hospitals with whom Relator enjoyed privileges.

105.     Baudendistel and SLU knew of Relator's contractual relationship with his new employer and of Relator's business relationship with his patients and with his referring physicians.

106.     The aforementioned acts of retaliation were intentional acts by Baudendistel and SLU, designed to interfere with, damage and induce a breach of Relator's contractual relationship with his new employer.

107.     The aforementioned acts of retaliation were intentional acts by Baudendistel and SLU, designed to interfere with, damage and induce a severance of Relator's business relationships with his patients and referring physicians.

108.     No legal justification existed for Baudendistel and SLU to engage in the aforementioned acts of retaliation.

109.     As a direct and proximate result of the aforementioned acts and omissions of SLU and Baudendistel, Relator has suffered damages of an unknown amount as a result of the aforementioned, which include but are not limited to the fact that Relator's patient base and professional reputation has been damaged.

110.     Said acts and omissions were done with the intentional or reckless disregard of Relator's best interests and were done without just cause or excuse.

111.     Said acts and omissions were malicious and outrageous because of the reckless indifference to Relator's best interests.

WHEREFORE, Relator prays for judgment against SLU and Baudendistel, jointly and severely, for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such amount as would fairly and reasonably punish SLU and Baudendistel and each of them and deter them and others from like

conduct, for legal interest, for the costs of this suit, and for such other and further relief as this Court deems just and proper.

<h2 style="text-align:center"><u>Count XIV:  Wrongful Discharge against SLU</u></h2>

COMES NOW Relator Edwin Dunteman, and for Count XIV of his Third Amended Complaint against SLU, states to the Court as follows:

112.     Relator incorporates by reference herein as if set out in full each and every averment contained herein above in paragraphs 1 through 51 and 90 through 111 of this Third Amended Complaint

113.     SLU wrongfully coerced Relator to resign and caused Relator's employment with SLU to terminate in retaliation for the fact that Relator refused to perform an illegal act and because Relator refused to perform an act contrary to a strong mandate of public policy, as set out hereinabove.

114.     SLU wrongfully coerced Relator to resign and caused Relator's employment with SLU to terminate in retaliation for the fact that Relator reported wrongdoing and/or violations of law and public policy to his superiors, as set out hereinabove.

115.     SLU wrongfully coerced Relator to resign and caused Relator's employment with SLU to terminate in retaliation for the fact that Relator acted in a manner that should be encouraged as a matter of public policy, as set out hereinabove.

116.     SLU and Baudendistel retaliated against Relator for Relator's refusing to engage in said fraudulent billing practices and for Relator's insisting that SLU and Baudendistel abandon their fraudulent billing practices and said retaliatory conduct was designed to force Relator to resign and included, without limitation, the following:

(a)    SLU and Baudendistel stripped Relator of all authority to perform the duties for which he was employed;

(b)    SLU and Baudendistel created a hostile work environment;

(c)    SLU and Baudendistel and each of them demanded that Relator cover Acute Service Care because, according to Defendant Baudendistel, he wanted a "white boy seen on the floors;"

(d)    SLU and Baudendistel fabricated unsubstantiated and slanderous claims with regard to Relator's professional competence;

(e)    SLU and Baudendistel attempted to place blame on Relator for certain acts for which he was not responsible;

(f)    SLU and Baudendistel engaged in volatile and vulgar behavior designed to insult and inflame Relator;

(g) SLU and Baudendistel consistently violated patients' confidences by barging in unannounced on consultations between Relator and said patients

117.    SLU and Baudendistel knew that Relator had engaged in said protected conduct and, in retaliation for said protected conduct, SLU and Baudendistel demoted, threatened, harassed and, eventually, coerced Relator to resign and the above-mentioned acts of retaliation were motivated solely by Relator's protected conduct.

118.    Even after Relator had tendered his resignation, SLU and Baudendistel further retaliated against Relator and engaged in a pattern of conduct, which included certain slanderous comments, designed to interfere with Relator's practice, with his reputation in the medical community and with his relationships with his patients, and which include but are not limited to the following acts:

(a) By refusing to provide information to the patients about Relator's whereabouts, by causing Relator's patients to believe that Relator was not accepting any referrals, by causing Relator's patients to be told that Relator refused to consult with them;

(b) By providing Relator's patients with false information about Relator, by making false statements about Relator to other individuals in the medical community;

(c) By refusing to cooperate in providing Relator with information about Relator's patients;

(d) By interfering with Relator's ability to provide his patients with continuous care after Relator left SLU's employ;

(e) By causing patients to be told that Relator's whereabouts were unknown;

(f) By causing patients to be told that Relator failed to instruct SLU nor their employees as to his whereabouts;

(g) By informing referring physicians, with whom Relator enjoyed longstanding professional relationships, that Relator personally stopped accepting new patients and/or that Relator was unavailable to assist said new patients and/or that Relator had left the practice;

(h) Upon information and belief, by causing his new employer into pressuring Relator into dismissing this action; and

(i) Upon information and belief, by attempting to sabotage Relator's relationships with his new employer and with certain area hospitals with whom Relator enjoyed privileges;

119. As a direct and proximate result of the aforementioned acts and omissions of SLU and Baudendistel, Relator has suffered damages of an unknown amount as a result of the aforementioned, which include but are not limited to the following:

(a).     Relator first was induced to leave BJC and then SLU and Baudendistel forced Relator to leave SLU, thereby foreclosing Relator from pursuing major academic and clinical opportunities within the St. Louis medical community;

(b).     Relator's patient base and professional reputation has been damaged as a result of Relator's being induced to leave BJC and then being forced to leave SLU and then being subjected to the above-mentioned acts of retaliation;

(c)     Relator's earnings after leaving SLU have been substantially lower than what they would have been had he stayed at BJC or SLU.

120.     The aforementioned acts and omissions of SLU and Baudendistel were done with reckless disregard of Relator's best interests and were done without just cause or excuse.

121.     Said acts and omissions were malicious and outrageous because of their reckless indifference to Relator's best interests.

122.     Said acts and omissions showed complete indifference to and a conscious disregard for Relator's interests.

WHEREFORE, Relator prays for judgment against Defendant SLU, for such actual damages as are fair and reasonable to compensate for Relator's losses, for exemplary and punitive damages in the amount of $500,000.00 or such other amount as would fairly and reasonably punish Defendant SLU and deter it and others from like conduct, for legal interest, for the costs of this suit, for attorney fees and for such other and further relief as this Court deems just and proper.


## REQUEST FOR JURY TRIAL

The Relator hereby requests a trial by jury on all counts as to all issues so triable.

Respectfully Submitted,

SIEGEL SEVASTIANOS, PC


By:    /s/Gary M. Siegel
GARY M. SIEGEL, #4364
Attorney for Relator Dunteman
120 South Central, Suite 130
St. Louis, Missouri 63105
(314) 725-7577 (Phone)
(314) 862-8050 (Fax)


## CERTIFICATE OF SERVICE

The below-signed certifies that on the 3rd day of January 2005, a true and accurate copy of the above and foregoing was filed electronically with the Clerk of the Court, to be served by operation of the Court's electronic filing system upon the following: Mr. Winthrop B. Reed, III; Mr. Gerald Rodriguez; and Claire M. Schenk


By:    /s/Gary M. Siegel
GARY M. SIEGEL, #4364